Monica C. STAMUS, Appellant

v.

Michael J. DUTCAVICH, Appellee.

Superior Court of Pennsylvania.

Submitted Feb. 26, 2007.

Filed Dec. 14, 2007.

Jennifer B. Ayers, Williamsport, for appellant.

Michael F. Salisbury, Lock Haven, for appellee.

BEFORE: FORD ELLIOTT, P.J., BOWES and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Monica C. Stamus, appeals from the order entered in the Court of Common Pleas of Clinton County dismissing her Protection from Abuse (PFA) order against Appellee, Michael J. Dutcavich. The issues for our review are whether the trial court erred in: (1) issuing a rule to show cause rather than ordering a contempt hearing upon receipt of an indirect criminal contempt complaint; and (2) dismissing *sua sponte* the PFA order when neither party had petitioned for amendment or dismissal. We find error in both actions, specifically concluding that the trial court's dismissal of the PFA order was contrary to the plain meaning of 23 Pa.C.S.A. § 6108(d). Accordingly, we vacate the order and remand.

¶ 2 Appellant and Appellee have two children together. On May 19, 2006, Appellant was granted a six-month PFA order against Appellee by the trial court. The order, which was precipitated by Appellee's alleged physical abuse of Appellant, prohibited him from having any contact with her, and, *inter alia*, also prohibited him from possessing firearms. On September 10, while the children were visiting him for the weekend, Appellee borrowed guns from his father and took the children target shooting. Ap-

pellant, upon learning of the incident from the children, reported his activity to police as a violation of the PFA order. The police filed a complaint on Appellant's behalf, and the trial court issued a rule to show cause why Appellee should not be held in contempt of the protection order. At a hearing on September 21, the trial court found Appellee's violation to be *de minimis* and then, without request or petition from either party, dismissed the PFA order.

¶ 3 Our standard of review for PFA orders is well settled. "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *Drew v. Drew,* 870 A.2d 377, 378 (Pa.Super.2005) (quoting *Ferri v. Ferri,* 854 A.2d 600, 602 (Pa.Super.2004)). When interpreting statutes, "we exercise plenary review." *Commonwealth v. Fedorek,* 913 A.2d 893, 896 (Pa.Super.2006) (citing *Commonwealth v. Magliocco,* 584 Pa. 244, 883 A.2d 479, 481 (2005)).

¶ 4 On appeal, Appellant argues that the trial court committed procedural errors when it dismissed the PFA order. Before examining this claim, we first address the trial court's issuance of a rule to show cause rather than ordering a criminal contempt hearing. The procedure for finding a defendant in violation of a PFA order is set forth in sections 6113 through 6114.1 of the Protection From Abuse Act.[1] When police have filed a complaint of indirect criminal contempt pursuant to section 6113, a contempt hearing must be scheduled within ten days. 23 Pa.C.S.A. § 6113(f). After the hearing, the "court

may hold the defendant in indirect criminal contempt and punish the defendant in accordance with law."[2] 23 Pa.C.S.A. § 6114(a). On the other hand, a private plaintiff may file a petition for civil contempt under section 6114.1, after which the trial court must issue a rule to show cause why the defendant should not be held in contempt. 23 Pa.C.S.A. § 6114.1; *In re Contempt of Cullen,* 849 A.2d 1207, 1211 (Pa.Super.2004) (noting that rule to show cause is first step court must undertake when holding person in civil contempt) (citing *Lachat v. Hinchliffe,* 769 A.2d 481, 488–89 (Pa.Super.2001)), *appeal denied,* 582 Pa. 676, 868 A.2d 1201 (2005).

¶ 5 In the instant case, following Appellee's alleged violation of the PFA order, police filed a section 6113 complaint of indirect criminal contempt against Appellee. (Complaint Alleging Violation of Protection from Abuse Order, filed 9/14/06). Because police had initiated proceedings, the trial court was required by statute to order a prompt contempt hearing. *See* 23 Pa.C.S.A. § 6113(f). The court therefore erred when it issued a rule to show cause rather than scheduling a contempt hearing. *See id.; Cullen, supra.*

¶ 6 We similarly find error in the trial court's dismissal of the PFA order when no motion to dismiss was before it. Section 6108(d) states that a "court may amend its order or agreement at any time upon subsequent petition filed by either party." 23 Pa.C.S.A. 6108(d). Section 6117(a) clarifies that "modification [of a PFA order] may be ordered after the filing of a petition for modification, service of the petition and a hearing on the petition." 23

---

1. 23 Pa.C.S.A. §§ 6101–6117.

2. Indirect criminal contempt occurs when a party violates a court order or decree "outside the presence of the court." *Commonwealth v. Ashton,* 824 A.2d 1198, 1203

(Pa.Super.2003). Direct criminal contempt, in contrast, is "the misbehavior of any person that takes place in the presence of the court" which obstructs "the administration of justice." *Id.*

Pa.C.S.A. § 6117(a). Furthermore, section 6108(e)(1)(i) mandates "a duly filed petition, notice to the defendant and a hearing" before an extension of the protection order may be granted. 23 Pa.C.S.A. § 6108(e)(1)(i). Likewise, before a temporary PFA order can be terminated, there must be "notice and hearing." 23 Pa. C.S.A. § 6107(b)(2).

■ ¶ 7 Because neither party in the instant case petitioned for modification of the PFA order as required by sections 6108(d) and 6117(a), the trial court's dismissal was improper; the issue of whether the order should be dismissed was simply not before it. "Courts cannot rule on matters not before them." *In the Interest of M.B.,* 356 Pa.Super. 257, 514 A.2d 599, 600 (1986), *aff'd,* 517 Pa. 459, 538 A.2d 495 (1988). If the trial court thought that Appellee's actions constituted merely a *de minimis* violation of the order, it should have declined to find Appellee in contempt and ended the proceedings. *See Commonwealth v. Haigh,* 874 A.2d 1174, 1178 (Pa.Super.2005) (vacating conviction of indirect criminal contempt when defendant's infraction was *de minimis* and non-threatening), *appeal denied,* 585 Pa. 686, 887 A.2d 1240 (2005). However, the trial court exceeded the bounds of the contempt proceeding by addressing the merits of the original PFA order.

■ ¶ 8 Our Court has previously expressed disapproval of a trial court's reliance on issues raised *sua sponte* when dismissing a PFA order. A trial court "impinge[s] upon the role of the litigants by relying upon issues raised *sua sponte* to dismiss the proceedings." *Commonwealth v. Nelson,* 456 Pa.Super. 349, 690 A.2d 728, 730 (1997). This conduct "is sufficient, by itself, to warrant reversal." *Id.* We find *Nelson* to be applicable, as the trial court raised the possibility of dismissal *sua sponte,* then dismissed the proceedings.

■ ¶ 9 Appellee nonetheless maintains that the dismissal was proper under section 6108(d), arguing that Appellant's contempt complaint was a "petition" sufficient to raise not only the issue of his alleged contempt, but also the existence of the PFA order itself. (Appellee's Brief at 2). He essentially contends that the trial court may amend or dismiss a PFA order any time either party complains of an alleged violation of the order. We cannot agree.

¶ 10 Section 6108(d), read in light of section 6117(a), requires that before a court may amend a protection order or agreement a petition **to amend** must be filed by either party. 23 Pa.C.S.A. §§ 6108(d), 6117(a). "[O]ur reading of a statute is governed in the first instance by the plain meaning of the statutory language in question." *Carrozza v. Greenbaum,* 591 Pa. 196, 916 A.2d 553, 564 (2007). We are unable to comprehend how a complaint alleging violation of a PFA order, meant to trigger a contempt proceeding and seek **enforcement** of the order, can in any fashion be considered a petition to amend, as Appellee would have us do. A petition is "a formal written request presented to a court or other official body." Std. Pa. Prac. § 15:18 (citing Black's Law Dictionary, 7th ed. (1999)). In contrast, a section 6113 or 6113.1 complaint, such as that filed by the police on behalf of Appellant in the instant case, clearly seeks enforcement rather than amendment of a PFA order.[3] *See* 23 Pa. C.S.A. § 6108(d). Section 6108(d) thus requires that a party seeking to amend or

---

**3.** We note that during the hearing Appellant indicated her intention to extend the duration of the PFA order and to relax terms in order to allow some contact between her and Appellee. (N.T., 9/21/06, at 3). However, we emphasize that this was only her stated intention, and that no petition to amend was actually filed.

dismiss a PFA order must file a formal written request specifically seeking either amendment or dismissal of the order.[4] *Id.* Because no such petition was submitted, the trial court could not amend, much less dismiss, the PFA order.[5]

¶ 11 We respectfully reject the reasoning set forth in the dissenting opinion, that because Appellant did not object to the trial court's action at the hearing, this issue is waived under Pa.R.A.P. 302(a). In *In the Interest of M.B., supra,* a petition was filed pursuant to the Child Protective Services Law alleging that a father physically abused his child. *Id.* at 600. The trial court determined the abuse allegation to be unfounded, but *sua sponte* declared the child dependent under the Juvenile Act. *Id.* While the opinion does not reveal whether the father objected to the court's jurisdiction to make a dependency finding at the hearing, the father raised this challenge on appeal. *Id.* This Court stated: "Courts cannot rule on matters not before them. It is … the pleadings which limit the court's agenda. 'The pleadings determine the issues in any given case.'" *Id.* (citations omitted).

> The general rule requiring conformity between the allegata and probata is intended to avoid the injustice that would result by confronting a defendant at trial with proof of a cause of action of which he was not put on notice and which he is not prepared to defend.

*Id.* at 600–01 (quoting *Computer Print Systems, Inc. v. Lewis,* 281 Pa.Super. 240, 422 A.2d 148, 152 (1980)). Citing the due process requirement that a litigant receive notice of the issues before the court, we stated,

> It is even more egregious an error when the lack of notice, through variance from the pleadings, is the court's doing. For when the issue is first stated only in the court's resolution of it, the unsuspecting party has no opportunity during the proceedings to voice his objections or match his case to the altered issue.

*In the Interest of M.B., supra* at 601.

¶ 12 We find the reasoning in *In the Interest of M.B., supra* to be applicable here. At the hearing, the parties argued the propriety of telephone contact initiated by each with the other. The trial court suggested that the PFA order be dissolved, to which Appellee agreed. Appellant's counsel responded that although his client did initiate telephone contact with Appellee, there was no PFA order preventing her from doing so, and the contact was made in the best interests of the parties' children. The court then immediately dismissed the PFA order. Although Appellant did not specifically raise at the hearing the issue of whether the trial court had authority to vacate the PFA order, the court's first statement of any intention to dissolve the order was almost contemporaneous with its resolution. *See id.*

¶ 13 We also distinguish the facts of the instant case from those in *Kelley v. Mueller,* 590 Pa. 91, 912 A.2d 202 (2006), cited in the dissenting opinion. In *Kelly,* the trial court granted a PFA petition, ordering the defendant to turn over to the police all of his firearms and weapons, which the

---

**4.** We offer no opinion as to whether dismissal is appropriate when considering a petition to amend.

**5.** Public policy also militates in favor of Appellant. Victims of abuse may be less likely to report PFA order violations if they fear that the court might dismiss the order at a subsequent hearing. Indeed, a person against whom a PFA order has been issued may seek

to violate it intentionally in a *de minimis* manner, hoping that the trial court will ultimately dismiss the order. Such an outcome is inconsistent with the "central and extraordinary feature of the PFA," which is to "prospectively control and prevent domestic violence." *Lawrence v. Bordner,* 907 A.2d 1109, 1113–14 (Pa.Super.2006).

plaintiff attested to having seen in his home. *Kelly v. Mueller,* 861 A.2d 984, 988 (Pa.Super.2004). When the defendant denied possession of any weapons, the court, invoking authority under the PFA Act, directed the sheriff to conduct a search and seizure at the defendant's home in order to enforce the order. *Id.* On review, the Pennsylvania Supreme Court held that because the defendant did not raise before the trial court the issue of whether the PFA Act confers authority to a court to search and seize, it was waived and this Court erred in addressing it. *Kelley,* 912 A.2d at 203–04.

¶ 14 Thus in *Kelly,* the trial court, originally presented with a petition to grant a PFA order, took unilateral action to enforce the resultant order. However, here, at a hearing to resolve a police complaint that Appellee violated a PFA order, the court *sua sponte* dismissed the underlying PFA order. In light of the due process concerns stressed in *In the Interest of M.B.,* we decline to apply such a strict application of the waiver rule under Pa. R.A.P. 302(a). Therefore, we do not find this issue waived.

¶ 15 Accordingly, we vacate the trial court's orders issuing a rule to show cause and dismissing the PFA order and remand to the trial court for a contempt hearing to resolve the police complaint of indirect criminal contempt filing.[6] *See* 23 Pa. C.S.A. § 6113(f).

¶ 16 Order vacated. Case remanded with instructions. Jurisdiction relinquished.

¶ 17 BOWES, J. files a Dissenting Opinion.

---

6. We note that the PFA order was due to expire after this appeal was taken. However, we do not find this appeal to be moot, as under the trial court's dismissal order, there was no PFA order that could expire. Thus, our remand to the trial court is not to be construed as endorsing an extension of the PFA. We remand instead simply for the complaint of indirect criminal contempt, filed by police when the PFA order was still in effect, to be heard.

## DISSENTING OPINION BY BOWES, J.:

¶ 1 As Appellant failed to object to the dismissal of the PFA order, her challenge to the propriety of that ruling is waived and should not be addressed by this Court. Thus, I respectfully dissent.

¶ 2 At the September 21, 2006 hearing, Appellee's counsel openly admitted that Appellee had violated the PFA order by taking his children target shooting but asserted that the infraction was *de minimis* because Appellee merely wanted to bond with the children, and he did not use the rifle to threaten or intimidate Appellant. *See* N.T. Hearing, 9/21/06, at 2–3. Appellant's counsel agreed that the violation was minor and then shifted the focus of the proceedings to an issue that was not raised in the police complaint. Specifically, Appellant's counsel stated that her client was "actually contemplating filing a petition to extend this [PFA] Order ... because of actions that [Appellee] has taken regarding multiple voice messages and phone calls to [Appellant]." *Id.* at 3. Appellee's counsel responded that it would be unjust to penalize Appellee for telephoning Appellant because Appellant initiated physical contact with Appellee and telephoned him on multiple occasions after she obtained the PFA order. The following excerpt from that discussion is relevant herein:

APPELLEE'S COUNSEL:

[T]his is a two-way street. [Appellant] is calling [Appellee] all the time. We also have the same messages within the week or so [of the target shooting

incident]. [Appellant] showed up at the house. Asked [Appellee], can I come in; can I get this; can I get that, which he permitted her to do. She went to the extent of taking the drapes and curtains off of the windows. So if she's that afraid [of Appellee], my question is, what's she doing down at the marital residence that he's granted exclusive possession of and taking things out of the house?

THE COURT:

See. We might be better off to just dissolve the Protection from Abuse Order and go from the day one-this day forward.

APPELLEE'S COUNSEL:

[The parties] are in the middle of a custody matter with this Court.... So [Appellee is] wholeheartedly behind the Court's suggestion that this PFA Order be dissolved. [Appellant] lives in State College, and [Appellee] lives [in Lock Haven]. It's not like they're even going to run into each other....

. . . .

APPELLANT'S COUNSEL:

Your Honor, if I may, my position on behalf of my client is that the communication that my client has instituted between herself and [Appellee], I would note for this Court that this is not a mutual PFA situation. There is no PFA against my client. I've instructed my client that she cannot excuse the Court Order requiring [Appellee] to have no contact with her.

THE COURT:

But when she contacts him, she's inviting contact. She's inviting a violation.

APPELLANT'S COUNSEL:

She certainly didn't invite him to go pick up his guns.

THE COURT:

I understand that. But why, then, is she contacting him?

APPELLANT'S COUNSEL:

For the best interest of the children.

THE COURT:

The Order is that the underlying PFA is hereby dismissed. That's the Order.

APPELLEE'S COUNSEL:

Thank you, Your Honor.

*Id.* at 4–7.

¶ 3 The record establishes that Appellant's counsel had several opportunities to argue that the PFA order in question could not be dismissed absent a formal written request, but she failed to lodge a single objection to the procedural irregularity during the September 21, 2006 hearing. Accordingly, I believe we are constrained to find this issue waived under *Kelley v. Mueller,* 590 Pa. 91, 912 A.2d 202 (2006).

¶ 4 In *Kelley,* a panel of this Court held that trial court judges had authority under the PFA to order police to search residences for weapons and that such orders did not violate the Fourth Amendment to the United States Constitution or Article 1 § 8 of the Pennsylvania Constitution. Our Supreme Court granted review and reversed, observing that the search-and-seizure issue was waived under Pa.R.A.P. 302(a) because it "was not properly challenged in the common pleas court...." *Id.* at 95, 912 A.2d at 204.

¶ 5 In the instant case, the trial court noted that Appellant failed to object to the dismissal of the PFA order and therefore concluded that she was precluded from challenging the court's ruling. *See* Trial Court Opinion, 11/3/06, at 2. In light of

our Supreme Court's pronouncement in *Kelley*, I regretfully believe it is improper for the majority to address this issue on the merits.[7] As I would find the issue to be waived under Rule 302(a), I must reluctantly dissent.

---

7. If it was procedurally proper to reach this issue, I would endorse the position taken by the majority and join in the disposition recommended in its opinion.