J-S52044-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.L.R. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.M.R. | |
| Appellant | No. 1278 EDA 2014 |

Appeal from the Order Entered March 28, 2014
In the Court of Common Pleas of Delaware County
Domestic Relations at No(s): 14-80323

BEFORE:  GANTMAN, P.J., ALLEN, J., and FITZGERALD, J.*

MEMORANDUM BY GANTMAN, P.J.:                 **FILED AUGUST 20, 2014**

Appellant, J.M.R. ("Husband"), appeals from the order entered in the Delaware County Court of Common Pleas, which granted the petition filed by Appellee, S.L.R. ("Wife"), against Husband under the Protection from Abuse ("PFA") Act.[1]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.[2]  Husband raises the following issues for our review:

_____

[1] 23 Pa.C.S.A. §§ 6101-6122.

[2] We note that on April 21, 2014, the court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b),
(Footnote Continued Next Page)

_____

*Former Justice specially assigned to the Superior Court.

WAS THE EVIDENCE INSUFFICIENT TO SUPPORT THE PFA ORDER?

WERE THE TRIAL COURT'S FINDINGS THAT [HUSBAND] VIOLATED THE PROVISIONS OF THE PFA ACT AGAINST THE WEIGHT OF THE EVIDENCE AND WITHOUT SUPPORT IN THE RECORD?

(Husband's Brief at 4).

The relevant scope and standard of review are as follows: "In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." ***Stamus v. Dutcavich***, 938 A.2d 1098, 1100 (Pa.Super. 2007) (quoting ***Drew v. Drew***, 870 A.2d 377, 378 (Pa.Super. 2005)). "When interpreting statutes, we exercise plenary review." ***Stamus, supra*** (internal citation and quotation marks omitted).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse." ***Buchhalter v. Buchhalter***, 959

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

which Husband filed on May 5, 2014. This case was designated as a Children's Fast Track case, so Husband should have filed his concise statement contemporaneously with his notice of appeal. ***See*** Pa.R.A.P. 1925(a)(2)(i). Nevertheless, we decline to dismiss or quash Husband's appeal, or find waiver of his appellate issues on this basis. ***See In re K.T.E.L.***, 983 A.2d 745 (Pa.Super. 2009) (explaining in Children's Fast Track cases, appellant's failure to file concise statement contemporaneously with notice of appeal does not divest this Court of jurisdiction, but results in defective notice of appeal to be disposed of on case by case basis; general waiver analysis for failure to file court-ordered Rule 1925(b) statement does not apply in context of noncompliance with Rule 1925(a)(2)(i); declining to quash or dismiss mother's appeal where she filed concise statement three days after notice of appeal and noncompliance with Rule 1925(a)(2)(i) caused no prejudice to parties).

A.2d 1260, 1262 (Pa.Super. 2008) (quoting **Custer v. Cochran**, 933 A.2d 1050, 1054 (Pa.Super. 2007) (*en banc*)). "[T]he Protection From Abuse Act does not seek to determine criminal culpability. A Petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence." **Snyder v. Snyder**, 629 A.2d 977, 982 (Pa.Super. 1993).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Ann Osborne, we conclude Husband's issues merit no relief. The trial court opinion discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed May 16, 2014, at 5-9) (finding: **(1)** court found Wife's testimony that she fears Husband credible, and did not find Husband's testimony credible; Wife's fear of Husband is reasonable; Wife testified Husband physically touched her on two occasions, once grabbing her pants and once shoving Wife's face; court rejected Husband's justification for shoving Wife; Husband made numerous threats to Wife that she should "watch out"; Wife testified to incident where Husband followed her; Husband's behavior demonstrates his commitment to dominate and control Wife; reasonable person in Wife's position would fear Husband's actions would escalate and become more violent; Wife established by preponderance of evidence that Husband knowingly engaged in course of conduct that placed Wife in reasonable fear of bodily injury; Wife presented

sufficient evidence for entry of PFA order against Husband; **(2)** evidence established pattern of conduct by Husband that put Wife in reasonable fear of Husband; court gave great weight to Wife's testimony because court found Wife credible, and afforded little weight to Husband's testimony because court found him incredible; court's decision was not against weight of evidence; additionally, some circumstances which Husband claims court ignored in rendering its decision were not made part of record at PFA hearing and, therefore, court could not have considered them in ruling; moreover, "factors" which Husband believes court disregarded are not relevant to whether Husband's actions placed Wife in reasonable fear of bodily injury, and court would have afforded no weight to those factors even if Husband raised them at hearing; Husband abused Wife as defined in PFA Act[3]).[4] Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

_____

[3] Husband listed eight factors in his Rule 1925(b) statement, which the court allegedly failed to consider when making its determination. The court said Husband did not present factors "b", "c", "f", and "g" at the PFA hearing. We agree Husband offered no testimony in support of factors "c", "f", and "g" at the hearing, but note Husband touched on factor "b" (that Husband attempted to decelerate the acrimony between the parties by proposing one of the parties move out of the marital residence). As the court explained, however, this factor had no impact on the court's PFA decision.

[4] The correct citation for **Raker v. Raker** is 847 A.2d 720 (Pa.Super. 2004).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/20/2014

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CIVIL ACTION - LAW**

S. L. R.
**Plaintiff/Appellee**

vs.

J. m. R.
**Defendant/Appellant**

:   **DOCKET NUMBER: 2014-080323**
:
:   **CIVIL ACTION – LAW**
:
:   **PROTECTION FROM ABUSE**
:
:   **No. 1278 EDA 2014**
:

**Edward Solum, Jr., Esquire, Attorney for Appellee**
**Donald E. Havens, Esquire, Attorney for Appellant**

## O P I N I O N

**OSBORNE, J.**                                      **FILED: May 16, 2014**

Appellant, J. m. R. (hereinafter "Husband"), appeals from the Final Protection From Abuse Order entered against him on March 28, 2014, which, *inter alia*, directed Husband to have no contact with Appellee, S · L · R · (hereinafter "Wife"), for one year. On April 16, 2014, Husband filed this timely Appeal. On April 21, 2014, the Court filed a 1925(b) Order directing Husband to file a Concise Statement of Matters Complained of on Appeal, and on May 5, 2014, Husband filed the following statement:

1. The evidence was insufficient to support the PFA Order.

2. The trial court's findings that Defendant violated the provisions of the PFA Act are against the weight of the evidence and without support in the record.

1

**FACTS**

On March 20, 2014, Wife filed a <u>Petition for Protection From Abuse Order</u> ("Petition"), and the Court granted a Temporary Protection From Abuse Order on that same date which, among other things, directed Husband to refrain from abusing, harassing, stalking or threatening Wife and to have no contact with her, evicted and excluded him from the parties' residence and awarded temporary physical custody of the parties' two children to Wife. The Court held a hearing on March 27, 2014, at which both parties appeared and were represented by counsel.

At the hearing, Wife testified to an incident on January 19, 2014, where she came home around 2:00 a.m.[1] Wife stated that same morning Husband entered her separate bedroom at 5:30 a.m., woke her from sleeping, and Wife stated "he asked who was the guy I was 'fucking the night before', I said 'I don't know what you're talking about.' I got out of bed and asked him to leave the room. At that point he grabbed the waistband of my pants and proceeded to ask me what was I wearing underneath." During this testimony, the Court observed that Wife was visibly upset and crying. Wife stated that she was "freaked out" by this incident. Husband did not testify as to whether or not this incident occurred.

Wife testified that on December 18, 2014, Husband shoved Wife's face because he was angry that she did not pick up milk for the household. Husband admitted that, with an open hand, he pushed Wife's face away from him during a

---

[1] As of the filing date of this Opinion, the Court has not received the Notes of Testimony. Because the case is a Fast-Track Children's Appeal, the Court had to issue the Opinion before receiving the Notes of Testimony, and therefore it is unable to cite to page numbers when referring to the parties' testimony.

"heated argument." Husband testified that he and Wife engage in hundreds of heated arguments.

Wife testified that on December 28, 2013, as she was driving from her mother's house, she noticed that Husband was following her in his car. Wife stated that she pulled off the road she was travelling on to wait for Husband to pass her. Wife stated that she later confronted Husband about the incident, and that he admitted to her that he was following her because he wanted to know why she was on that particular road. Husband denied he followed her and denied the conversation about him following her ever happened.

Wife testified that on November 29, 2013, Husband started an argument with Wife about which one of them should have to move out of the house. Wife stated that she tried to go up to her bedroom to get away from Husband and that when she tried to close her door, Husband pushed it open and continued to yell at her. Husband did not testify to whether or not this incident occurred.

Wife testified that on February 10, 2014, Husband started yelling at Wife for not making him dinner. Wife stated she left the room and went into the bathroom, shutting the door behind her. Wife testified that while she was using the toilet Husband opened the door and came into the bathroom to continue to yell at Wife. Husband denied that he gets angry when Wife does not make him dinner, but he did not testify as to whether or not this incident occurred.

Wife testified that on December 22, 2013, Wife left the house for a few hours and that when she returned to the bathroom she shares with Husband, she found a pubic hair placed on her toothbrush. Wife stated that she confronted Husband

3

about the pubic hair, and that he admitted to placing it on her toothbrush. Husband did not testify as to whether or not this incident occurred.

Wife testified to multiple occasions in the past six months where Husband has said many demeaning things to her, including but not limited to: (1) that he has a girlfriend; (2)that he had sex with his girlfriend in Wife's bed, and (3) that he receives oral sex from his girlfriend in the parties' kitchen and invited Wife to come to the house around noon each day to witness this event. Husband denied that he ever made any of those statements to Wife. Further Wife testified that after telling her that he had sex with his girlfriend in Wife's bed, Husband said that he would do it again and that Wife could smell his underwear after. Wife testified to multiple occasions where Husband has left dirty underwear on top of her clothing in their shared closet, which she believed to be "sex-stained" underwear, all of which Husband denied. Wife attached to her Petition photographs of Husband's underwear she found in on top of her clothes. *See* Petition attachments 1-4, and 6-7.

Wife testified to several statements made by Husband to Wife which she perceived to be threats, and that made her feel intimated, such as "Don't try to park in the garage, or you'll be sorry," "Get your stuff out of my closet, or you will be sorry," "Don't test me," "Watch out, you are being watched" and "Paybacks are a bitch."

On March 28, 2014, the Court entered a Final PFA Order against Husband, directing him to have no contact with Wife for one year, evicting and excluding him from the parties' residence, and granting Wife temporary primary physical custody

4

of the parties' children. On April 4, 2014, Husband filed Post-Trial Motions Under Pa RCP No. 227.1(a)(3) Motion for Reconsideration. On April 7, 2014, the Court denied Husband's motion pursuant to Pennsylvania Rules of Civil Procedure 1901.7(b), which provides that no motion for post-trial relief may be filed to a Final Protection From Abuse Order. This timely appeal followed.

## DISCUSSION

### 1. Sufficient Evidence Existed to Support a Finding of Abuse Under the Protection From Abuse Act

The Court found that Wife proved by a preponderance of the evidence that Husband knowingly engaged in a course of conduct under circumstances which placed Wife in reasonable fear of bodily injury. *See* 23 Pa.C.S.A. § 6102(a)(5) (providing definitions of "abuse"). When faced with a sufficiency of the evidence challenge, the appellate court must review the evidence in the light most favorable to the prevailing party and grant that party the benefit of all reasonable inferences to determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. *Custer v. Cochran*, 933 A.2d 1050, 1058 (Pa. Super. 2007). The preponderance of the evidence standard is "defined as the greater weight of the evidence, *i.e.*, to tip the scale slightly." *Raker v. Raker*, 847 A.2d 270, 724 (Pa. Super. 2004). Credibility of the witnesses and the weight that should be accorded to their testimony "is within the exclusive province of the judge as fact finder." *Mescanti v. Mescanti*, 956 A.2d 1017, 1019-1020 (Pa. Super. 2008) (citing *Karch v. Karch*, 885 A.2d 535, 537 (Pa. Super. 2005).

5

The Court found Wife's testimony that she is in fear of Husband to be credible, and conversely, the Court did not find Husband's testimony to be credible. Not apparent in the transcripts of the proceeding is the demeanor of the parties. Wife was visibly crying during parts of her testimony, and at times she was unable to get her words out; when Wife was able to speak, her voice sounded shaky. Based on the Court's observations of Wife, the Court believed Wife when she stated she is afraid of Husband.

When considering Wife's testimony as a whole, the Court found Wife's fear of Husband to be reasonable. Wife testified to two occasions on which Husband physically touched Wife, once grabbing her pants and the other shoving her face. The Court declines to accept Husband's justification for shoving Wife because she was yelling at him and put her face close to his face. The Court can think of other ways to handle this type of situation, such as moving away from the person, which does not involve physically placing a hand over someone's face and shoving them away. Considering the two occasions where Husband physically accosted Wife along with the numerous threats that she should "watch out," the times where Husband did not allow Wife to get away from him during an argument, and the incident where Wife witnessed Husband following her showed his commitment to domination and control of his wife. The Court believes a reasonable person in Wife's position would fear Husband's actions would escalate and become more violent. The Court does not believe that Wife was obliged to grant Husband's words and actions the most favorable, benign or non-violent interpretation.

6

## 2. The Court's Decision Was Not Against the Weight of the Evidence

Husband's second issue asserts that the verdict of the Court is against the weight of the evidence and he seeks a new trial. Although the vast majority and possibly the entirety of Pennsylvania decisional law addresses this claim following trials before a jury, in the interest of responding to Husband's concerns, the following analysis is offered.

A new trial is required when the jury's verdict is so contrary to the evidence so as to "shock one's sense of justice." Further, a jury verdict is set aside only if it appears to have been the product of passion, prejudice, partiality or corruption, or where it clearly appears from uncontradicted evidence that the verdict bears no reasonable relationship to the harm suffered. *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1 (1994).

A motion for a new trial on grounds that the "verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict but contends, nevertheless, that the verdict is against the weight of the evidence." *Commonwealth v. Hodge*, 441 Pa. Super. 653, 658 A.2d 386,388 (1995). The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Moreno*, 14 A.3d 133 (2011).

For the same reasons set forth in Part 1, the Court does not believe its decision was against the weight of the evidence, as the evidence established a pattern of conduct by Husband that put Wife in reasonable fear of him. The Court

7

gave great weight to Wife's testimony, as the Court found her credible, and little weight to Husband's testimony, as the Court found him to be incredible.

Further, in his 1925(b) statement, Husband claims the Court failed to give sufficient weight to the following factors:

a. The current controversy between the parties has arisen from the Divorce Action commenced in May 2013.

b. Husband has attempted to decelerate the acrimony between the parties by at one time attempting to move out himself but was blocked by the petitioner and on another occasion by requesting that the petitioner/wife move out of the residence with the children.

c. Husband's intention was to spare his children M.R. and M.R. from further exposure to the arguments between their parents.

d. On February 13, 2014, husband through is counsel, submitted to wife's counsel a Property Settlement Agreement.

e. Husband is 50 years of age and an ex-policeman with no marks against his character or any history of violent behavior.

f. If the PFA Order remains, husband/respondent will lose his employment at Sunoco Logistics which requires background checks due to its involvement with Homeland Security which will prove detrimental to his support of his children.

g. Husband may even be barred from coaching in his children's sporting activities.

The facts in b, c, f, and g were not made part of the record on March 27, 2014, and therefore Husband cannot present these facts to the Court for the first time on appeal. Further, none of the factors Husband presents have any relevance to whether or not his actions put Wife in reasonable fear of bodily injury, and therefore even if established at trial would have been entitled to no weight. The Court weighed the evidence that was properly before the Court, which showed by a preponderance of the evidence that Husband has abused Wife as defined in Section 6102 of the Protection From Abuse Act, and therefore Wife was entitled to relief.

## CONCLUSION

For all of the foregoing reasons, the Court's Order granting Wife's Petition for Protection From Abuse Order for one year should be affirmed.

BY THE COURT:

Ann Osborne, Judge